María Ríos Méndez, Plaintiff and Petitioner, *v.* Banco Popular de Puerto Rico, Defendant and Respondent.

No. 11461. Resubmitted August 9, 1957.—Decided May 27, 1959.

*Antonio J. Amadeo* for petitioner. *Damián Monserrat, Jr.,*
*Gabriel de la Haba* and *Rafael Baragaño, Jr.* for respondent.

MR. JUSTICE SALDAÑA delivered the opinion of the Court.

The fundamental question raised in this appeal, in brief
and precise terms, is as follows: When does the limitation
period of the subsidiary action of damages arising from the
nullity of a mortgage foreclosure begin to run? Bearing in
mind the nature of such action and the provisions of § § 1864
and 1869 of the Civil Code (1930 ed.), 31 L.P.R.A. § § 5294
and 5299, it seems unquestionable that the limitation period
begins to run from the moment the marshal, in representa-
tion of the debtor, adjudicates the mortgaged property to
the purchaser after the sale and the bidding have taken
place and the purchase money is paid. It is necessary to
consider this adjudication as a sort of sale, for it produces
a conveyance for a price, in which, by operation of law,
the owner's consent is substituted by the act of a public
officer. The properties are *"auctioned"* and *"sold"* at that
instance and, if the purchaser so requests, he would also
be immediately placed in possession thereof. 32 L.P.R.A.
§ 1142. *Cf. Lloréns* v. *Arbona,* 61 P.R.R. 270 (1943). In
other words, the sale takes place by the mere adjudication,
even though thereafter it be set up in a public deed which
serves as ownership title for the purposes of its registration
in the registry. Thus, if the foreclosure proceeding is null,
the adjudication results in the deprivation of the property,
it impairs the right of the debtor which may be revendicated
immediately, and there arises the corresponding action to
accomplish this, either through revendication with return of
the fruits, as long as the properties have not passed into
the hands of a third-party mortgagee, or through an equiva-

lent or subsidiary action for damages when it is impossible to obtain the specific return of the properties with their fruits. And since there is no special provision to the contrary, the limitation period of the action of the aggrieved debtor should be counted from the day in which his right of action undoubtedly accrues. Section 1869 of the Civil Code (1930 ed.), 31 L.P.R.A. § 5299.

In the case at bar, the alleged nullity of the summary foreclosure proceeding instituted by the Banco Popular de Puerto Rico was based on the fact that the creditor collected default interest which were not secured by mortgage. Although the defendant in its original answer objected to the nullity, it thereafter admitted that the summary proceeding was void and that the property had passed into the hands of a third-party mortgagee, relying exclusively on its defense that the action for damages had prescribed. The evidence heard at the corresponding hearing before the lower court showed that the initial petition of the foreclosure proceeding was filed on March 15, 1934; that process was served on the debtor by the marshal on March 20, 1934; that the mortgaged properties were auctioned and awarded to the creditor Banco Popular de Puerto Rico on June 26, 1934; that on June 30, 1934, the deed of award at judicial sale was executed by the marshal before Notary Public Damián Monserrat y Suro in favor of Banco Popular; and that the real property was sold thereafter by the said Banco to Trinidad Soler by public deed executed on November 16, 1934. The Superior Court held as a question of law: *first*, that the mortgage foreclosure proceeding instituted by the Banco was null and void, according to the defendant's admission; *second*, that since the property passed into the hands of a third-party mortgagee, as admitted by the defendant, the action brought by the debtor, based on the nullity of the summary proceeding, was not an action of revendication of the real property and return of the fruits

thereof, but rather the equivalent or subsidiary action for damages against the foreclosing creditor; *third,* that such subsidiary action for damages, brought by the plaintiff on June 20, 1949, is an *ex contractu* action which prescribes within 15 years; and, *fourth,* that the prescription period of such action begins to run from the date demand for payment is made by the marshal. Based on the foregoing conclusions, the lower court held that the action to recover the damages resulting from the nullity of the mortgage foreclosure had prescribed, and rendered judgment dismissing the complaint. The plaintiff alleges before this Court that the Superior Court erred in holding that her action had prescribed. In our opinion, she is right: the action was brought before the expiration of 15 years counted as of the sale and adjudication of the mortgaged properties, that is, as of June 26, 1934, and the prescriptive period should be counted as of that date and not from the service of process by the marshal.

■■ We must first explain the nature of the action herein which is based on the nullity of the summary proceeding. As already pointed out, it is not an action of revendication of the real property but the equivalent or subsidiary action for damages against the foreclosing creditor. This action is based on art. 38 of the Mortgage Law (30 L.P.R.A. § 63) and art. 169 of the Regulations for its Execution (30 L.P.R.A. § 1090). The first of those articles in its pertinent part provides that " . . . In any case in which the resolutory or rescissory action can not be brought against a third person in accordance with the provisions of this section *the proper personal action may be brought for the recovery of damages from the person who may have caused them.*" (Italics ours.) The second article, namely, art. 169 of the Regulations, provides in its pertinent part: " . . . The [initial] petition referred to in this section, which shall always be authorized by the signature

of an attorney at law, shall enumerate the facts and the legal reasons supporting the correctness, the subsistence and the demandability of the claim and the jurisdiction of the court; it shall specifically state the exact amounts collected by way of interest or on account of the principal of the debt, stating also the net amount of the claim which, by the mere act of instituting the proceedings the creditor will contract, *assuming liability for any loss or damage the debtor or interested third persons may suffer through malice or negligence in not making a true statement of facts and of the circumstances which the judge must take into consideration in authorizing the institution of the proceedings and continuing them.*" (Italics ours.) It is well to point out that the Spanish foreclosure trial (art. 1429 *et seq.* of the Law of Civil Procedure) requires "the protest of effecting legitimate payments" (art. 1439). As pointed out by De la Plaza in II–1 *Derecho Procesal Civil Español* 1412–13 (3d ed. 1955), this ritual requirement is actually a mere historical survival. *Cf.* 5 Manresa, *Comentarios a la Ley de Enjuiciamiento Civil* 467 (3d ed. 1910). Therefore, the sole purpose of the liability provision of art. 169 of the Mortgage Regulations ". . . which, by the mere act of instituting the proceedings the creditor will contract . . . ," was to relieve the latter from making the protest required by the Spanish procedural law in the petition of the ordinary foreclosure proceeding. See González Alegre, *Los Procedimientos Judiciales de la Ley Hipotecaria* 93 (2d ed. 1955). In our law, that provision no longer plays any role, since the requirement of protest of effecting legitimate payments and also the foreclosure proceeding of the Spanish civil procedure have disappeared.

In view of the privileged position of the foreclosing creditor in the mortgage action, the precepts contained in arts. 38 and 169 *supra* consist in an absolute imposition of the duty to state the truth with respect to the facts and

circumstances to be weighed by the judge for the purpose of authorizing the summary proceeding. According to art. 175 of the Mortgage Law Regulations (30 L.P.R.A. § 1096), the summary proceedings can not be suspended except in three cases: (1) where there is evidence of a criminal proceeding charging the forgery of the mortgage deed in which a complaint shall have been admitted or an order of prosecution has been issued; (2) when an action in intervention of ownership has been filed, based on title of ownership filed on a date prior to the record of the mortgage and not canceled in the registry; (3) when a certificate from the registry of the cancellation of the mortgage, or an authentic copy of the instrument of cancellation bearing a memorandum of its presentation, is presented. According to the express provision of art. 175 *supra*, " . . . All other claims that may be brought, either by the debtor or by third persons in possession and other persons interested, including those involving the nullity of the title or of the proceedings, or the maturity, truth, extinction or amount of the debt, shall be heard in the proper plenary action, without ever producing the effect of suspending or interfering with the execution proceedings. . ." In other words, the foreclosure proceeding will continue its ordinary course even though the debtor is able to show the inaccuracy or falsity of the facts alleged in the initial petition. That is why the law requires the foreclosing creditor to tell the truth when stating the facts in the initial petition.

██ ██ The "malice or negligence" referred to in said art. 169 of the Mortgage Regulations refers both to the concealment or falsity of the reality, knowingly, and to incorrectness through error of law or through negligence in the investigation of the facts stated in the initial petition. By operation of law, the creditor is held liable and is bound to compensate the damages caused to the foreclosed debtor by *illegalities* in the exercise of his action. We have so

repeatedly declared in holding: (1) that it is necessary to comply strictly with the procedures and requirements of the summary proceeding, thereby rendering null and void the acts performed by deviating therefrom; and (2) that the collection of excessive interest or other amounts not secured by mortgage is a substantial error, to the prejudice of the debtor's rights, which renders void the foreclosure proceeding instituted, even though such illegality is due to a mere error of law or to mere negligence in the investigation of the facts alleged in the initial petition. See, among others, *Piovanetti* v. *Vivaldi*, 80 P.R.R. 108 (1957); *Gaztambide* v. *Heirs of Ortiz*, 70 P.R.R. 388 (1949); *Buil* v. *Banco Popular*, 69 P.R.R. 237 (1948); *F. Rodríguez Hnos. & Co.* v. *Aboy*, 66 P.R.R. 498 (1946); *Costas* v. *G. Llinás & Co.*, 66 P.R.R. 688 (1946); *De Jesús* v. *Assad*, 63 P.R.R. 131 (1944); *Figueroa* v. *Boneta*, 58 P.R.R. 811 (1941); *Vázquez* v. *Gutiérrez*, 52 P.R.R. 162 (1937); *Gutiérrez* v. *Longpré*, 44 P.R.R. 643 (1933); *Martorell* v. *Crédito y Ahorro Ponceño*, 42 P.R.R. 632 (1931); *Santos* v. *Crédito y Ahorro Ponceño*, 41 P.R.R. 934 (1931).[1]

But such penalty is not proper—we must emphasize it—unless there is a showing of the existence of the damage caused by the nonperformance of the obligation assumed by the foreclosing creditor. See Judgment of the Supreme Court of Spain of June 4, 1952, 39 *Juris. Civil* 76 (2d ed.); 4 Roca Sastre, *Derecho Hipotecario* 835 (5th ed. 1954); and González Alegre, *Los Procedimientos Judiciales de la Ley Hipotecaria* 93 (2d ed. 1935).

---

[1] In *Heirs of Ramírez de Arellano* v. *Superior Court*, ante, p. 347 we pointed out that: "It is not incumbent on the judge to investigate or determine the accuracy or falsity of the acts alleged in the initial petition to authorize the summary proceeding. Such responsibility falls entirely on the foreclosing creditor. Nor is it necessary in order for the proceeding to be void that the conduct of the foreclosing creditor be equivalent to deceit. An error constituting negligence because the allegation is contrary to facts or to the juridical rules is sufficient."

Because this is a fact: in the last instance, the action of the foreclosed owner to recover the damages caused by the nullity of the summary proceeding is based on the non-performance of a contractual obligation of the mortgagee. In fact, the mortgage contract imposes on the creditor the duty to assert his foreclosure right to the encumbered property without committing illegalities. If he commits any, then he violates the obligation contracted. We so held in *Giménez et al.* v. *Brenes*, 10 P.R.R. 124, 127 (1906), in stating that: ". . . The summary procedure for the recovery of mortgage debts is the result of a contract between parties wherein they have agreed upon the prestations and have also stipulated the method of collecting the debt in case of noncompliance, that is to say, in case of failure of the debtor to pay." This notion has deep historical roots. As stated by Prieto Castro, the summary foreclosure proceeding is truly ". . . *an ideological and actual derivation of the agreement of submission to the foreclosure in the primitive Spanish law.*" See 177 *Rev. Gen. de Legis. y Juris.* 493 (1947). The mortgagor accepts that, in the event of nonperformance, the creditor has the right to foreclose directly the mortgaged properties through distraint proceeding, that is, without personal action or adversary suit relative to the credit, outside the usual procedure for determining the correctness, demandability, and subsistence thereof. Such determination is carried out without any trial or adversary proceedings between the parties. It depends on the facts and circumstances which the foreclosing creditor may state in the initial petition whether the judge may order the substantiation of the summary proceeding. 4 Roca Sastre, *Derecho Hipotecario* 820–87 (5th ed. 1954). The creditor, on his part, is bound by the contract and by the law to comply with the steps of the foreclosure proceeding in order to collect the mortgage. It is easily understood, then, that ". . . the malice or negligence referred to in

art. 169, *supra,* [of the Mortgage Regulations] originates in a contractual obligation or at least in a contractual antecedent, for if no contractual relationship had been established between the litigants in this case, the obligation of the defendant to indemnify the plaintiff by reason of the failure to prosecute the summary foreclosure procedure in accordance with the provisions of the Mortgage Law, would have never arisen." *F. Rodríguez Hnos. & Co.* v. *Aboy,* 66 P.R.R. 498, 509 1946).

It is to be noted that in this action for damages the plaintiff is entitled to recover the market value of the property at the time she was deprived thereof at the sale. She is also entitled to recover the equivalent of the civil fruits and rents yielded by the real property while it was in the hands of the foreclosing creditor, if the latter was the purchaser at the sale, and interest on the value thereof, if the foreclosing creditor did not purchase the real property at the sale or if it sold it thereafter to a third party, from the date of the public sale or of the sale to a third party to the date the judgment of the Superior Court or of this Supreme Court, on appeal, becomes final. On the other hand, in order to determine the amount of those damages, it is necessary to deduct (1) the taxes paid by the defendant, (2) the principal of the mortgage loan, and (3) the interest from the maturity of the mortgage credit to the date the judgment which may be rendered by the Superior Court or by this Supreme Court, if an appeal is taken, becomes final. See *Arvelo et al.* v. *Banco Territorial y Agrícola de Puerto Rico,* 29 P.R.R. 996 (1921); *Isaach* v. *Del Toro,* 33 P.R.R. 959 (1925); *Pontón* v. *Succrs. of de Huertas González,* 42 P.R.R. 511 (1931); *Santana* v. *Orcasitas,* 47 P.R.R. 695 (1934); *F. Rodríguez Hnos. & Co.* v. *Aboy, supra;* and *Nogueras* v. *Muñoz,* 67 P.R.R. 413 (1947). In other words, the compensation which the foreclosing creditor is bound to pay to the debtor in this action for damages is determined

in accordance with § § 1255 and 1259 of the Civil Code (1930 ed.), which govern the obligations of the contracting parties when the nullity of an obligation is decreed.[1a]

■■ Hence, it follows that the action against the foreclosing creditor to recover the damages caused by the nullity of the foreclosure proceeding is an *ex contractu* personal action rather than *ex delicto*. And no special term being fixed therefor, such action prescribes after fifteen years from the day it accrues, pursuant to the provisions of § § 1864 and 1869 of the Civil Code (1930 ed.), 31 L.P.R.A. § § 5294 and 5299.[2] This is the well-established rule of this Court. See, among others, *Buil* v. *Banco Popular*, 69 P.R.R. 237, 248 (1948); *F. Rodríguez Hnos. & Co.* v. *Aboy*, 66 P.R.R. 498, 508–11 (1946); *Gutiérrez* v. *Longpré*, 44 P.R.R. 643 (1933); and *Arvelo et al.* v. *Banco Ter. y Agr.*, 25 P.R.R. 677 (1917). Therefore, the exact moment when prescription begins to run is *the day the action could have been instituted against the foreclosing creditor* for the damages caused to the debtor's right by the nullity of the mortgage foreclosure proceeding. And, as we know, no reason or circumstance which does not affect the *legal possibility* of bringing such action should be taken into account. The question which we ought to ask is, when did such action arise? The only answer is undoubtedly: when the debtor's

---

[1a] "When the nullity of an obligation has been declared, the contracting parties shall restore to each other the things which have been the object of the contract with their fruits, and the value with its interest, without prejudice to the provisions contained in the following sections." (Sec. 1255.)

"Whenever a person, who is obliged by a declaration of nullity to return a thing, can not return it because it has been lost, he must return the fruits collected and the value which the thing had when lost, with interest from the same date." (Sec. 1259.)

[2] These sections, copied verbatim, read as follows:

"A mortgage action prescribes after twenty years, and those which are personal and for which no special term of prescription is fixed, after fifteen years. (Sec. 1864.)

"The time for the prescription of all kinds of actions, when there is no special provision to the contrary, shall be counted from the day on which they could have been instituted." (Sec. 1869.)

right could have been asserted because it was impaired or violated by the creditor. Hence, the prescriptive period begins to run from the moment the debtor is illegally deprived of his property, that is, from the date of the sale and adjudication of the mortgaged properties. That is the act which impairs the rights of the debtor and which makes it legally possible to exercise the action of revendication. The creditor's obligation consists, in fact, in not depriving the mortgagor of his property without complying strictly with the legal provisions for summary proceedings. It is an obligation not to do an act, that is, it is directed to an omission, wherefore it is necessary to consummate a contrary act in order to give rise to the debtor's action. As long as such act of deprivation of the property, which is contrary to the obligation assumed by the mortgagee, is not consummated, the debtor may not legally bring an action for damages. Prescription begins to run as of that moment. *Cf.* Judgment of the Supreme Court of Spain of May 8, 1903, 95 *Juris. Civ.* 736; I-II Castán, *Derecho Civil Español, Común y Foral* 716–18 (9th ed. 1955); 12 Manresa, *Comentarios al Código Civil Español* 944–46 (5th ed. 1951); 1 Borrell y Soler, *Derecho Civil Español* 507–15 (1955).

▆▆▆▆ It is true that, according to the well-established doctrine of this Court, in admitting the summary proceeding the judge actually renders a final judgment based on the contract between the parties. That is why the demand for payment made to the debtor constitutes notice of such judgment. See *Vázquez v. Gutiérrez*, 52 P.R.R. 162 (1937); *Arsuaga v. District Court*, 43 P.R.R. 958 (1932); and *Perales v. District Court*, 43 P.R.R. 865 (1932). However, the mortgagor has a period of thirty days after demand is made to make payment. Moreover, if payment is not tendered, the law provides that notices of the sale shall be published for a period of twenty days. After the public sale is held, the property is awarded to the highest bidder, the purchaser

is placed in judicial possession of the property, and the sale is formalized by executing the corresponding deed. Therefore, the summary proceeding does not end when the marshal makes demand for payment. See *Salas* v. *Cabassa*, 69 P.R.R. 423, 433 (1948); *Fed. Land Bank* v. *Court*, 47 P.R.R. 399 (1934); *Gratacós* v. *District Court*, 46 P.R.R. 175 (1934); and *Arroyo* v. *Zavala*, 40 P.R.R. 257 (1929).[3] On the other hand, we have held that " . . . The court does not exhaust its powers in ordering the issuance of the demand for payment nor does it lose all control over the proceeding, but, upon discovering any jurisdictional defect which is apparent on the face of the petition or of the documents attached thereto, it may vacate its original order, either of its own initiative or at the instance of one of the parties to the proceeding." *Miranda* v. *District Court*, 41 P.R.R. 616, 620 (1930), and *Domenech, Treas.* v. *Suau, Fiol & Co.*, 49 P.R.R. 738, 739 (1936). Thus, the nonperformance *sensu stricto* of the creditor's contractual obligation is not consummated either by the filing of an initial petition containing false or erroneous averments or by the authorization of the summary proceeding by virtue of a judicial order, or by the notice to the debtor of the demand for payment. As long as the sale and award is not carried out, there is only a future possibility of nonperformance. The latter is consummated only when the marshal awards the properties at the sale to the acquirer or purchaser. At that moment there also arise the damages which, as pointed out before, constitute an indispensable requirement for the exercise of the action for indemnity based on art. 169 of the Mortgage Law Regulations. Judgment of the Supreme Court of Spain of

---

[3] Once an order is issued to sell the properties at a public sale, the summary proceeding for the collection of mortgage credits must comply in all further proceedings had with the provisions of the Act of March 9, 1905 (32 L.P.R.A. § § 1141–47). However, Act No. 69 of 1931 (Sess. Laws, p. 432) reestablished with certain amendments art. 127 of the Mortgage Law. *Font* v. *Registrar*, 52 P.R.R. 820 (1938). See 2 Muñoz Morales, *Lecciones de Derecho Hipotecario* 214–36, and cases therein cited

June 4, 1952, 39 *Juris. Civ.* 76 (2d ser.). There is no question that the mortgage proceeding may be challenged even though the same has not terminated (even before the demand for payment), by the filing of an ordinary personal action. Article 175 of the Mortgage Law Regulations, 30 L.P.R.A. § 1096; *Mestre et al.* v. *Michelena et al.*, 30 P.R.R. 142 (1932); *Roca Sastre, op.' cit. supra* at 882–83. But it is obvious that in this "plenary suit" the debtor could not claim from his creditor damages which he will suffer only when the properties are sold at a public sale. Thus, for example, in *Arvelo et al.* v. *Banco Terr. y Agr.*, 25 P.R.R. 677 (1917), the property involved in the summary proceeding was awarded to the defendant bank on September 26, 1898, and the action for damages was not brought until September 7, 1913. We held that the action had not prescribed despite the fact that the demand for payment was made on February 23, 1898. If this date had been taken as the starting point for prescription, as alleged by the respondent bank herein, this Court would have necessarily reached a different conclusion otherwise.

It is to be noted, also, that the subsequent conveyance of the properties by the purchaser to a third-party mortgagee and its registration by the latter in the Registry can not logically alter the period of prescription of the action for damages arising from the nullity of the summary proceeding. However, in *Carmona et al.* v. *Cuesta*, 20 P.R.R. 215 (1914), we held that the period of prescription of such action begins to run from the day on which the foreclosed properties are recorded in the Registry in favor of a third party. That doctrine is erroneous and should be overruled. The fact that the personal action for the recovery of damages suffered by the foreclosed debtor is "subsidiary" in character, simply means that resort must be had, in the first place, to the principal action of revendication or of *mere declaration of the property*, if the foreclosure proceeding is

null and void and the property has not passed into the hands of a third-party mortgagee.[4] Save in exceptional cases, the normal consequence in our law of the nonperformance of the different classes of obligations, both in the case of an obligation to give or to do and in the case of not to do, is the execution *in natura* or specific performance of the obligation. See 3 Castán, *Derecho Civil Español, Común y Foral* 160 *et seq.* (8th ed. 1954); 2 Colin y Capitant, *Cours Elementaire de Droit Civil Francais* 111 *et seq.* (10th ed. 1948); Szladits, *The Concept of Specific Performance in Civil Law,* 4 Am. J. Comp. L. 208 (1955). Hence, it is necessary to require specifically the performance of the contractual obligation of the foreclosing creditor, when decreeing the nullity of the proceeding, by the return of the property and the fruits. Only when it is impossible to procure the execution of such obligation *in natura* there is room for its substitution by the action for damages, which is an equivalent and subsidiary performance. But it could not be maintained that the personal action against the foreclosing creditor for compensation for damages arises or

---

[4] There is no question that the action designated "principal" arises immediately after the sale. In the *real* action of revendication which is exercised *erga omnes*, regardless of the wrongful occupant, it is absolutely necessary that the defendant be in possession of the thing claimed. *Rosso v. Rosso,* 23 P.R.R. 122, 125 (1915), and *Estate of Gorbea v. Pérez,* 10 P.R.R. 436, 438 (1906). But it is not indispensable that the natural possession of the thing be held by the defendant, the legal possession alone being sufficient. De Buen, *Derecho Civil, Común y Foral* 238 *et seq.* (1931). On the other hand, the action of mere declaration or determination of the property ". . . does not require that the defendant be possessor . . ." See Judgment of the Supreme Court of Spain of February 21, 1941, which is commented in 25 *Rev. de Derecho Privado* 206–07; and 2 Castán, *Derecho Civil Español, Común y Foral* 114–24 (7th ed. 1950). In other words, that the protection and defense of the property may be exercised by either of these actions: ". . . the classical and proper action of revendication, which serves as a means to protect the ownership as against a privation or illegal possession, it being directed fundamentally to the recovery of the possession, and the action of mere declaration or determination of the property, which does not require the defendant to be possessor, the purpose being to obtain a declaration that the actor is the owner of the thing. . ." *Ibid.* 115.

originates whenever the revendication of the real property is impossible at law. In other words, such action for damages is not "subsidiary" in the sense that it arises when that of revendication is extinguished. It is regarded as an equivalent or subsidiary action because it substitutes the adequate natural performance of the foreclosing creditor's obligation. Thus, for example, in an action for breach of a bilateral contract of promise to sell, the proper thing is to demand the specific performance by executing the corresponding deed of sale; but if such a thing is impossible because the property is no longer owned by the promiser, then compensation for damages would be in order. Naturally, the limitation period of the action allowed to the beneficiary of the promise begins to run from the date of the promiser's failure to perform. The prescription of the action for damages does not commence when the specific execution is impossible. Both in that hypothetical case and in the case at bar, the injured contractual right may be forthwith revendicated after the violation thereof is consummated. It is to be noted that the mortgagor's right is definitively injured by the act of the sale. That is why the procedural rule that the summary proceeding does not terminate with the public sale is not significant. As pointed out previously, the adjudication in favor of the purchaser at the sale is a sort of sale and the properties are *"sold"* as of that moment, as provided by law. The execution of a subsequent deed merely serves as a title *for the purposes of recordation in the Registry.* In Puerto Rico, for procedural purposes only, it has been held that the mortgage foreclosure proceeding ends (1) "... with the possession of the premises, the execution of the deed of sale and its record in the registry of property" (*Arroyo* v. *Zavala*, 40 P.R.R. 257); (2) "... with the delivery of possession within thirty days, without prejudice to the discretionary power of the court to order the delivery of possession after

the expiration of the thirty days" (*Gratacós* v. *District Court*, 46 P.R.R. 170); and (3) ". . . with the public sale and with the issuance of the marshal's deed" (*Salas* v. *Cabassa*, 69 P.R.R. 423). We need not determine when the summary character of the foreclosure proceeding actually ends. That question of a procedural character is not raised in the case at bar. See footnote 3 *supra*.

 The doctrine on the commencement of prescription which was adopted in the *Carmona* case is also unacceptable for practical reasons. Prescription exists for reasons of social need and usefulness. As stated by Castán, I *op. cit. supra* at 705, ". . . it insures the stability of the property and the certainty of the other rights . . ." [and] ". . . it facilitates or renders unnecessary evidence of perfectly legal juridical situations which at times it would be costly or impossible to justify." Naturally, the period of prescription has to be arbitrary to a certain extent, but it should not be fixed in such a way as to make it unreasonable. We have held, however, that the action to request the annulment of the foreclosure proceeding never prescribes. See *Gaztambide* v. *Heirs of Ortiz*, 70 P.R.R. 388, 402 (1949); *Sucrs. de Huertas González* v. *Díaz*, 72 P.R.R. 501, 505 (1951); *Costas* v. *G. Llinás & Co.*, 66 P.R.R. 688, 697 (1946). This means that the action for damages against the foreclosing creditor, under the *Carmona* theory, could in many instances be brought within a period of fifteen years after the expiration of thirty years of the extraordinary usucapion.[5] Such a situation would be unreasonable and dangerous for the economic and juridical stability in Puerto Rico.

---

[5] If the action for the recovery of damages which the foreclosing creditor causes to the debtor arises or originates whenever the action of revendication (whether the "real" or the declaratory) is impossible, it matters little whether such impossibility is due to the existence of a vested title by the extraordinary prescription, or of a title in a third party by virtue of art. 34 of the Mortgage Law. In either case, the cause of action would be the same. The obligation which art. 169 of

Although the action for annulment of the mortgage fore-closure proceeding never prescribes because "prescription does not run against that which is nonexistent [and] the course of time cannot insufflate life to that which legally never had it," it might be impossible to obtain the return of the property and its fruits as, for example, (1) when the foreclosing party sells the property to another person who is a third party, pursuant to árt. 34 of the Mortgage Law, and (2) when the foreclosing creditor acquires title by extra-ordinary usucapion. Cf. *Gaztambide* v. *Heirs of Ortiz*, 70 P.R.R. 388, 400 (1949); *Díaz* v. *Quiñones*, 68 P.R.R. 232, 235–37 (1948); *Costas* v. *G. Llinás & Co.*, 66 P.R.R. 688, 697 (1946). We have already stated that the action for damages, based on art. 38 of the Mortgage Law and art. 169 of the Mortgage Law Regulations, is not "subsidiary" in the sense that it arises whenever the revendication of the real property is legally impossible. It merely substitutes the specific performance of the foreclosing creditor's obligation, to wit: the return of the property and its fruits. Since the action for damages prescribes after fifteen years counted from the date the properties are awarded by the marshal at the sale, the inaction of the debtor could place him in a disadvantageous position if the foreclosing creditor sells the property to a third-party mortgagee shortly before the expiration of those fifteen years. In such event, the debtor would forfeit all his rights at the expiration of the period of the action for damages. But this can not be brandished as a valid objection against our theory. The difficulty pointed out would arise from the debtor's own negligence.

the Mortgage Regulations imposes on the foreclosing creditor is, in effect, " . . . assuming liability for any loss or damage the debtor . . . may suffer through malice or negligence in not making a true statement of facts and of the circumstances which the judge must take into consideration in authorizing the institution of the proceedings and continuing them."

Furthermore, it is indispensable for the economy of the country that in such case a lapse of fifteen years should produce a state of unassailable right.

Briefly, the adjudication in favor of the foreclosing creditor Banco Popular was made by the marshal of the former District Court of San Juan where the summary foreclosure proceeding was heard on June 26, 1934. That is the date which serves as the starting point for computing the 15-year period of prescription. Since the action in the case at bar was brought on June 20, 1949, it is evident that it had not prescribed. The lower court therefore erred in dismissing the complaint on that ground.

The judgment appealed from will be reversed and the case remanded to the Superior Court, San Juan Part, for further proceedings consistent with this opinion.[6]

Mr. Justice Belaval dissented for the reasons stated in separate opinion.

Mr. Justice Santana Becerra concurs only in the result for the reasons stated in separate opinion.

---

MR. JUSTICE SANTANA BECERRA, concurring in the judgment.

In the light of the specific facts of the case under our consideration, I believe, as does the majority of the Court, that the action for damages herein had not prescribed when it was instituted. But, since I believe that even more important than the outcome of the case, which only affects the litigating parties, is the rule of law of general application which the Court now adopts in the sense that the subsidiary action for damages of this nature always begins to prescribe as of the day of the tax sale in a summary mortgage foreclosure proceeding, regardless of the particular situation in

---

[6] See *Paradís* v. *Fernández*, 47 P.R.R. 304, 312 (1934); *Martorell* v. *Crédito y Ahorro Ponceño*, 42 P.R.R. 632 (1931); and *Arvelo et al.* v. *Banco Ter. y Agr.*, 25 P.R.R. 677 (1917).

each case, I feel constrained to express my disagreement with the majority opinion.[1]

According to the record, on March 15, 1934 the Banco Popular de Puerto Rico filed a mortgage foreclosure proceeding against the Heirs of Magdalena Méndez widow of Ríos, the demand for payment having been issued on that same date and served on March 20, 1934 on the petitioner María Ríos Méndez, as heir and member of the estate, and by publication of edicts. On May 31, 1934, the then District Court of San Juan ordered the sale of the mortgaged property at public auction, providing that such order had the force of a writ ordering the possession within the period of 30 days counted as of the sale. The public sale was held on June 26, 1934, the property having been awarded to the mortgagees since there were no other bidders. On June 30, 1934, by deed No. 27 executed before notary public Damián Monserrat, the marshal conveyed the property to the purchaser without any reservation or limitation whatsoever, delivering and placing the same in its possession in the same act. On July 6, 1934, the property was recorded in the Registry in favor of the Banco, which held it in its possession until November 16, 1934, when by deed No. 34 executed before the said notary it conveyed the same to a third party.

On June 21, 1949, the petitioner filed a complaint against the Banco for annulment of the mortgage foreclosure proceeding and damages. In the ninth paragraph of the complaint she alleged verbatim:

"NINTH.—That the entry of the record made in the Registry of Property of San Juan in favor of the Banco Popular de Puerto Rico by virtue of the deed of sale of the property described in the third paragraph of the first cause of action hereof, which the marshal of the District Court of San Juan

---

[1] This opinion considers the case as submitted to us, in which the nullity of the foreclosure proceeding was accepted by the defendant, wherefore it is not necessary to consider that aspect.

executed in its favor, does not reveal categorically and clearly the causes of the nullity of the said foreclosure proceeding, as a result of which the plaintiff is precluded from exercising legally the action of revendication against the present owner of the real property foreclosed." .

She thus admitted that the person who acquired from the foreclosing Banco had the status of a third party in good faith and the bank accepted such fact and also the nullity of the summary foreclosure proceeding. She alleged, however, that the action of nullity exercised, "being the subsidiary action for damages according to the provisions of art. 38 of the Mortgage Law and § 1864 of the Civil Code," had prescribed.

There is no dispute between the parties as to the 15-year period of prescription for the action for damages. The only issue involved in this proceeding was as to the time from which said 15 years should have been counted. The defendant Banco maintained before the lower court that, since the sale of the property had been ordered on May 31, 1934, the complaint filed on June 20, 1949 [2] was filed 15 years and 20 days thereafter. The plaintiff maintained that the complaint was filed in due time, counted as of July 6, 1934, when the property was recorded in the registry in favor of the foreclosing creditor and the proceeding was terminated. The Superior Court held that the 15-year period should be counted as of March 20, 1934, when the demand for payment was executed, and this Court, upon reversal, now holds that the period of prescription should be counted as of the date of the sale, June 26, 1934. Let us see.

In simple and meridian-clear terms we solved that problem forty-five years ago in *Carmona et al.* v. *Cuesta*, 20 P.R.R. 215 (March 30, 1914). The lawful owners of a certain property involved in a dominion-title proceeding which was null because of falsity in the statement of facts, instituted an action of revendication. Since revendication did

---

[2] It was filed on June 21, 1949.

not lie because the property had already passed into the hands of a third party, according to the registry, —this occurred in 1906—we reserved to the owners, plaintiffs therein, the personal action for damages against whomever had caused them. That judgment was rendered on March 29, 1912. See *Carmona et al.* v. *Cuesta*, 18 P.R.R. 178. In consonance with our judgment, on April 15, 1913, the owners brought an action for damages against the petitioner in the dominion title proceeding which had been declared void. The question of prescription arose and prospered in the lower court which applied the one-year period of limitation provided by § 1868 of the Civil Code for actions arising from the fault or negligence referred to in § 1802 of that Code. In reversing the judgment holding that the action had prescribed, we stated as follows after holding that this action for damages is *ex contractu* and not an action arising from the fault or negligence referred to in § 1802:

"Now, according to section 354 of the Civil Code, the owner has a right of action against the holder and the possessor of a thing for its recovery. That is to say, the owner, as said by the attorney for the appellants, has a real, direct, and *primary* action to assert his right of ownership against an adverse or unjust tenancy or possession. The period of prescription for said action is 30 years according to section 1864 of the Civil Code.

"It may happen that the real property sought to be recovered is in the possession of a third person whose title is recorded in the registry of property and that the action of ejectment cannot be effective against him. In such a case the last subdivision of article 38 of the Mortgage Law provides that 'in any case in which the resolutory or rescissory action cannot be brought against a third person in accordance with the provisions of this article the proper personal action may be brought for the recovery of damages from the person who may have caused them.'

"The foregoing provision is in harmony with the second subdivision of section 1262 of the Civil Code to the effect that rescission shall not take place when the things which are the

object of the contract are legally in the possession of third persons who have not acted in bad faith, in which case the indemnity for damages may be claimed from the person who caused the lesion.

"According to the facts alleged in the complaint, the plaintiffs were entitled to recover the property of 40 *cuerdas* referred to and for that purpose they prosecuted an action of ejectment under the provisions of section 354 of the Civil Code, but the action was dismissed and this court in its judgment of March 29, 1912, deciding the case on appeal, held expressly that the dominion title proceedings brought by Cuesta Viyeyas which served as a title of ownership for the sale of the property by Viyeyas to Soldini and by the latter to Mary Leicht, were essentially null and void. The said action of ejectment not having prospered, this court reserved to the present plaintiffs the right to bring a personal action for an indemnity for damages against the person who may have caused the same. That action for damages accrues from the facts determinative of the action of ejectment and from the fact that the said action could not prosper because of the existence of a legal bar thereto consisting of the acquisition of the property in question by a third person who could not be compelled by law to make restitution. The action for damages in the present case has not the character of a principal action but that of a subsidiary action in view of the existence of a legal bar to the success of the action of ejectment, and it is a remedy which the Legislature has provided for the owner of a property in order that, being unable to recover the property, he may obtain reparation for his loss by means of the said action.

"As is seen, this action for damages is not an action claiming liability for fault or negligence as understood in subdivision 2 of section 1869 of the Civil Code, and therefore the period of one year for prescription fixed by the said section is not applicable to the case at bar. This is a personal action for which no special period of prescription is fixed and therefore it prescribes in 15 years, according to section 1865 of the Civil Code."

Describing thus the nature of this class of action for damages and the place which it occupies, we envisaged the problem now specifically under our consideration stating as follows:

"According to section 1870, the time for prescription should be counted from the day on which the action could have been brought, or from the year 1906, when the property was recorded in the registry of property in favor of a third person.

"The prescription was not interrupted by the action of ejectment which was dismissed, because, according to the accepted doctrine of the Supreme Court of Spain as laid down in its judgment of July 5, 1904, in order that the period for the prescription of a specific action may be considered to have been interrupted, it is necessary that the said action had been brought and not another action more or less similar thereto, and therefore section 1874 is not applicable to the present case. The complaint for indemnity for damages was filed on April 15, 1913. It cannot be held, then, that the action has prescribed by the lapse of the 15 years fixed by law, and consequently the court erred in dismissing the complaint on the ground of the prescription of the action due to its improper application of subdivision 2 of section 1869 of the Civil Code and its failure to apply section 1865. But can the judgment be sustained on the other ground of the demurrer—that is, that the facts do not constitute a cause of action?

"After having examined the facts and weighed them as a whole, we find that they constitute the cause of action for damages set up in the complaint and provided for by article 38 of the Mortgage Law, which is in harmony with section 1262 of the Civil Code."

The decision in the *Cuesta* case was based on a dominion title proceeding which was declared null, but the doctrine therein announced as to the nature of the action for damages herein, the period of prescription thereof, and its characteristic of subsidiary action, has been similarly upheld in actions for damages brought as a result of a summary foreclosure proceeding which has been declared null, in which the debtor was deprived of his property and in which, a third party having intervened, the resolutory action did not lie. See *Arvelo et al.* v. *Banco Ter. y Agr.*, 25 P.R.R. 677, 29 P.R.R. 996; *Polanco* v. *Goffinet et al.*, 29 P.R.R. 111; *Pontón* v. *Sucrs. of Huertas González*, 42 P.R.R. 511; *Román* v. *Rivera*, 43 P.R.R. 512; *Gutiérrez* v. *Longpré*,

44 P.R.R. 643; *Santana* v. *Orcasitas*, 47 P.R.R. 695; *F. Rodríguez Hnos. & Co.* v. *Aboy*, 66 P.R.R. 498; *Buil* v. *Banco Popular*, 69 P.R.R. 237.

The ruling in the *Cuesta* case has never been modified on that point despite the fact that the profession in later cases has insisted, without success, on the one-year period of prescription instead of the fifteen-year period fixed therein. As to the other aspect relative to the starting point from which those fifteen years begin to run, the question had not been raised again; we do not know whether because the rule laid down was clear and convincing, or because the situation did not arise again or because the litigants preferred to attempt to alter the period. The case of *Arvelo* v. *Banco Territorial, supra,* which is cited as an example that the fifteen-year period should be counted from the day of the public sale and not from the date of the order of demand for payment, on the ground that if in that case it had been counted from the demand, the action for damages, which we refused to hold that it had prescribed, would have prescribed, did not alter in the least the holding in the *Cuesta* case. As a question of fact, the dispute in the *Arvelo* case was as to whether the period of prescription should be fifteen years or one year; it did not involve the starting point, and the decision in the *Cuesta* case was reaffirmed and followed in that case.

A mortgagor who is deprived of his property as a result of a null foreclosure proceeding has a right of action under § 280 of the Civil Code, 1930 ed. (sec. 354, 1902 ed.) to recover the thing from the possessor and holder thereof. But many times he can not do this because the thing is beyond his reach, as happens when §§ 33, 34, 36, and 38 of the Mortgage Law and art. 175 of the Regulations, the latter as amended by Act No. 81 of May 13, 1936 (Sess.

Laws, p. 432) are applied, or also in an analogous manner as provided by § 1247 of the Civil Code.[3]

The debtor is not, however, defenseless. If the resolutory or rescissory action does not lie because the thing is in the hands of a third party who *shall have recorded his interest*, or is legally in the possession of a third person who has not acted in bad faith, he may bring action for damages

---

[3] Article 33 of the Mortgage Law.—"Instruments or contracts which are null under the law are not validated by their admission to record."

Article 34.—"Notwithstanding the provisions of the foregoing article, instruments or contracts executed or entered into by a person who, according to the registry, has a right to do so, shall not be invalidated with regard to third persons *after they have been recorded,* even though the interest of such party should subsequently be annulled or terminated by virtue of a prior deed which was not recorded or for reasons which do not clearly appear from said registry."

Article 36.—"Rescissory and resolutory actions shall not lie against third persons *who have recorded* the deeds of their respective interests in accordance with the provisions of this law."

Article 38.—"As a consequence of the provisions of article 36, no instrument or contract shall be annulled or rescinded to the prejudice of a third person *who shall have recorded his interest,* for any of the following causes:

". . . . . . . .

"In any case in which the resolutory or rescissory action can not be brought against a third person in accordance with the provisions of this article the proper personal action may be brought for the recovery of damages from the person who may have caused them."

Article 175.—Regulation.

". . . . . . . .

"All other claims that may be brought, either by the debtor or by third persons in possession and other persons interested, including those involving the nullity of the title or of the proceedings, or the maturity, truth, extinction or amount of the debt, shall be heard in the proper plenary action, without ever producing the effect of suspending or interfering with the execution proceedings, *but as regards third acquirers,* if from the registration the cause of action does not clearly appear, *the effect of such claims shall be subject to the provisions of Article 34 of the Mortgage Law.*"

Article 1247.—Civil Code.

". . . Neither shall rescission take place when the things which are the object of the contract *are legally in the possession of third persons* who have not acted in bad faith.

"In such case the indemnity for damages may be claimed from the person who caused the lesion."

against the person who may have caused them—art. 38 of the Mortgage Law—or against the person who caused the damage, according to § 1247 of the Civil Code.

In this case we need not concern ourselves with the first and direct resolutory or revendicatory action because the plaintiff herself accepted the status of the person who acquired the property from the creditor bank as an indisputable third party. The only problem which arises as to the subsidiary action for damages is its prescription. Section 1864 of the Civil Code (1930 ed.) provides that personal actions for which no special term of prescription is fixed prescribe after fifteen years; and § 1869, which supplements it, provides that the time for the prescription of all kinds of actions, when there is no special provision to the contrary (as is the case here), *shall be counted from the day on which they could have been instituted.* What does "could have been instituted" mean for the purpose of this section?

In his commentaries on § 1969 of the Spanish Civil Code, counterpart of § 1869 of our Code, Manresa says that " . . . [I]n the prescription of actions, the matter relative to the computation of the period fixed is even more important than in that of dominion in order to produce or consolidate the same, for it does not require any requisite for such purpose other than the lapse of time, and, consequently, everything which refers to the manner of computing the period is of greater interest than in any other case." Referring to § 1869 as a "supplementary" rule, and citing the judgments of November 22, 1902 and May 8, 1903 of the Supreme Court of Spain, *Manresa* maintains that "no reason or circumstance which does not affect the *legal possibility* of bringing such action which will prescribe should be taken into account in determining the day from which the term of prescription should begin to run, for the purpose of computing the same." [4] (Author's italics.)

---

[4] 12 *Comentarios al Código Civil* 944-45 (5th ed. 1951).

Other commentators express similar views. *Sánchez Román* says that "sec. 1969 of the Code [1869] does not require any explanation other than: first, the indication that its last words should be understood as referring to the *juridical possibility* of instituting the action, that is, the date as of which the action may be instituted in pursuance of law and as of which the time for its prescription shall be counted. . . ."[5] (Author's italics.) And *Castán*, after stating that the determination of the initial day of prescription has caused difficulties and doubts in the doctrine, says that "the theory of *actio nata*, according to which it is necessary that the action shall have arisen in order that prescription be possible, is traditional, for, as stated by Savigny, 'an action should not be abandoned as long as it can be exercised.' However, even when the rule of *actioni nundum natæ non preascribitur* is accepted, the question, as stated by Venzi (in his notes on Instituzioni de Pacifici-Mazzoni), is not disposed of since the fundamental question, that is, when the action arises, remains undecided. According to Venzi, the many answers given to this question may be summed up into two fundamental and counterpoised theories: the *realization* and the *injury* of the right. The action accrues, according to some, when the right can be asserted; the action accrues others say, when the right has been impaired or violated. In the opinion of this author, both are exactly the same when they are conveniently understood and applied to their proper relations. The test of the realization applies, as a general rule, to the personal rights, and that of the injury to the real rights, because in the former the content of the action is mistaken for that of the right, and in the latter they remain separate.

"In connection with such an important question as the commencement of extinctive prescription, our Civil Code provides a general rule and several special rules.

---

[5] 3 *Estudios de Derecho Civil* 296 (2d ed. 1900).

"The general rule merely consecrates the principle of *actio nata*. 'The time for prescription of all kinds of action, when there is no special provision to the contrary, shall be computed from the day on which they could have been instituted' (Art. 1969)." [6] (Author's italics.)

*Laurent* sums up the point with great precision as follows: "[T]he prescription of the personal actions commences from the moment the actions arise, since it is by reason of the duration of the action that the law declares it extinguished hence, *from the moment there is action* prescription will lie because the reason for the prescription is there: and when is there action? The action *is the right asserted in justice,* and the creditor can act in justice from the moment the obligation arises. In fact, judicial prosecution is the essence of all rights; that is the distinguishing trait of the juridical obligation; it is secured by the compulsory enforcement and such compulsory enforcement is but the resort to the courts. . . ." [7] (Italics ours.)

Our case law has adopted those same principles. *Cf. Roman Catholic Church* v. *People,* 11 P.R.R. 451; *Martí* v. *Hernández,* 57 P.R.R. 804; *Alcaide* v. *Morales,* 28 P.R.R. 258, in which the 15-year period of action to annul an acknowledgment was computed, not from the said acknowledgment made in 1900, but from 1904 when the father could have ascertained his condition of sterility, the action having been brought in 1916; *Rossy* v. *Martínez,* 70 P.R.R. 703; *Lange* v. *Honoré,* 47 P.R.R. 206; *Stella* v. *Municipality,* 76 P.R.R. 733; *Cordero* v. *Rivera,* 74 P.R.R. 548; *Malgor & Co.* v. *Clivillés & Co., Succrs., S. en C.,* 42 P.R.R. 441; sec. 37 of the Code of Civil Procedure— "Civil actions can

---

[6] I–2 *Derecho Civil Español, Común y Foral* 716–17 (9th ed. 1955), citing judgments of June 1, 1900, of May 8, 1903, and December 22, 1945.

[7] 32 *Derecho Civil Francés* 28–29 (1900). See, also, the judgments of the Supreme Court of Spain annotated by Medina y Marañón at the end of § 1969, *Leyes Civiles de España* 649, and by Rodríguez Navarro in IV *Doctrina Civil del Tribunal Supremo* 6102, at the end of the same section.

only be commenced within the periods prescribed in this Title, *after the cause of action shall have accrued. . . .*"

Today it has been held that the subsidiary action for damages accrued from the day of the public sale. For the purposes of the problem before us and of the arguments adduced to take that day as the starting point, I do not believe there is a great difference in using the date of the demand for payment, as held by the Superior Court, or the date of the order to sell, as contended by the Banco before that court, because, although the order of demand for payment does not have *per se* the immediate effect of *actually* depriving the debtor of the possession and enjoyment of the property, neither does the order to sell nor the public sale has it, since they do not terminate the proceeding because it terminates with the issuance by the marshal of the sale certificate and his act of placing the purchaser in possession of the property; nor does the sale automatically create in the person of the purchaser the condition of third party who *might have recorded his interest*, assuming that the latter is not the foreclosing creditor, in which case the sale certificate is not recordable either. See *Rosaly* v. *Ríos*, 63 P.R.R. 801; *Hernández* v. *Registrar*, 66 P.R.R. 814; *Salas* v. *Cabassa*, 69 P.R.R. 423; *Gratacós* v. *District Court*, 46 P.R.R. 170.

The case of *Sucrs. de Huertas González* v. *Díaz*, 72 P.R.R. 501, illustrates the situation. A mortgage credit was foreclosed in 1927, and at the public sale the property was awarded to the foreclosing creditor herself, and a deed of judicial sale was also executed in her favor. Notwithstanding the award at the sale, the debtors never delivered the possession, and in 1944, realizing that the foreclosure proceeding was null and void on the ground that the order of demand had been executed by a private person, the foreclosing creditor brought action seeking a declaration of nullity and that the debtors be ordered to pay off the mort-

gage loan and interest thereon as of the day it was granted. Notwithstanding the award made in 1927 at the sale in the foreclosure proceeding and the deed of judicial sale, we upheld the action brought by the creditor in 1944.

But returning to § 1869 and the opinion of the commentators and our decisions, the question is: When did the "legal possibility" arise for the plaintiff to bring action for the damages claimed (the value of the property and the rent therefrom) under the specific facts of this case? Would it have been possible for her to claim them the day after the *sale*, when she was in possession of the property and not even a direct action of revendication granted to every property owner by § 280 of the Civil Code accrued? Could she legally exercise an action for damages after the Banco took possession of the property and was enjoying it, considering that the presence of a third party who *might have recorded his interest* did not place the property beyond the reach of the plaintiff so that she could recover it? It seems that the answer to those questions should be in the negative. Between June 30, 1934, when the Bank took possession of the property, and November 16, 1934, when it conveyed it to a third party accepted as such by the plaintiff, the latter's action was merely resolutory or revendicatory and none other because, according to § 1869, as it has been construed, it was as of the latter date when the action for the damages she claimed "accrued" to her and it is from the accrual of such action that the latter begins to prescribe.[8] The plaintiff's right to claim as damages the value of the property and the rent and fruits therefrom did not arise from the fact of the void summary foreclosure proceeding and the public sale

---

[8] Actually, the correct doctrine is from the *recording in the Registry*, when the third party referred to in arts. 34, 36, and 38 of the Mortgage Law and art. 175 of the Regulations arises. There is no evidence in the record of the day the person who purchased from the Bank recorded in his favor, but since it could never have been prior to November 16, 1934, it does not affect my conclusion.

of the property. It arose (1) from the nullity of the proceeding, and *also* (2) from the fact of her inability to bring the revendicatory or resolutory action to repossess the property. Both requirements arose jointly only as of November 16, 1934.

The decision of this Court today has the juridical effect, without saying it, of altering the secondary or subsidiary nature contemplated for this kind of action for damages by art. 38 of the Mortgage Law or in the proper case by § 1247 of the Civil Code in order to convert it into a direct, optional, and alternative action in which the plaintiff may at her fancy either revendicate the property pursuant to § 280 of the Civil Code or claim damages instead. The latter is not in harmony with our decisions, and in *Palmieri* v. *Federal Land Bank*, 59 P.R.R. 4, we expressly said that such option or action could not be exercised in the alternative. In the *Palmieri* case the plaintiff entered *lis pendens* notice in an action of filiation. While the action was pending, the Federal Land Bank foreclosed a mortgage constituted in its favor by the heirs of the presumptive father and the property was awarded at a sale to third parties. The plaintiff, who had already been declared a natural daughter, moved for the annulment of the proceeding, but sued only the Bank for damages alleging that the property had passed to third persons. On the ground that she could bring direct revendicatory action against the third persons because they had acquired after the *lis pendens* had already been recorded, we refused to sustain the personal action for damages, citing at length the holding in the *Cuesta* case to conclude that, unlike that case, in the *Palmieri* case there were no third persons which would bar the first and direct action of revendication.

I see no good reason for overruling the holding in the *Cuesta* case, which is good jurisprudence sanctioned for almost half a century of legal life and which, in my judg-

ment, decides correctly the mortgage and civil-law situation herein involved.[9] I notice a certain preoccupation that it might result in a too-ample period of prescription. But we must not overlook the fact that, although this action for damages is personal, it has its origin in and is closely linked with real-property right, for which the Code does not provide short prescriptive periods. It is a known fact that it is not always possible to discover promptly the defects of a summary foreclosure proceeding, particularly when they are not procedural, which appear from the face of the record: the typical case of a debtor who dies before or after foreclosure and there are heirs involved, or when the nullity is declared by a judicial decision. In any event, it would be a problem of legislation and of public policy rather than of judicial determination. Since the decision in the *Cuesta* case, as a matter of fact, many legislative assemblies have convened, and no attempts have ever been made to modify by law the holding in that case.[10]

Lastly, it is intimated that if the doctrine in the *Cuesta* case were applied, the prescriptive period could be extended 15 years more after the thirty-year period for the acquisitive prescription of the dominion. This could occur only if during that period the foreclosing creditor himself is in possession of the property, and it would not occur because the acquisitive prescription would give him a better title than the one acquired through the void foreclosure proceed-

---

[9] As stated in *Crosas* v. *Longpré, supra*, this decision was cited with approval and followed by the Supreme Court of the Philippine Islands in *Cangco* v. *Manila Railroad Co.*, 38 Phil. Jur. 768, 773.

[10] Up to what point is it possible to reconcile the prescriptive period of 15 years counted from a fixed date, the public sale, with the firmly established principle that the action of nullity of a mortgage foreclosure proceeding never prescribes when the damages result from the nullity, *quære*. The judicial determination of the nullity of the foreclosure proceeding, even if it is made within the same action for damages, precedes the latter, and we have held that the court need not go into an examination of the damages if it rules that the foreclosure proceeding is not void. *Cf. Martorell* v. *Crédito y Ahorro Ponceño*, 42 P.R.R. 632; *Petterson* v. *Contreras*, 42 P.R.R. 474.

ing, but it would never convert him into a third party as respects the debtor. He would continue to be the party, and the personal subsidiary action which, as I have stated, lies only if the third party referred to in arts. 34, 36, and 38 of the Mortgage Law and art. 175 of the Regulations would intervene, would not lie.

---

Separate opinion of MR. JUSTICE BELAVAL.

I shall only deal in this case with the prescription of the different actions for the annulment of a summary foreclosure proceeding and for damages for collecting excessive interest, in accordance with our Mortgage Law. I notice that in our previous decisions, art. 38 of the Mortgage Law of 1893 and art. 169 of the Regulations for the execution thereof have been applied indistinctly as the legal provision authorizing the action of nullity of mortgage foreclosure proceedings for having collected excessive interest and the corresponding indemnity for damages. It is convenient to make a thorough analysis of the question to duly clarify this matter.

Article 36 of the Mortgage Law of Puerto Rico provides that rescissory and resolutory actions shall not lie against third persons who have recorded the titles of their respective rights. Article 37 excepts from this rule: (1) actions for the rescission of conveyances, made for the purpose of defrauding creditors in the following cases: (a) when the second conveyance was made under a gratuitous title, and (b) when the third person was a party to the fraud. In both instances (a) and (b), third persons shall not be prejudiced by a rescissory action not brought within one year from the date of the fraudulent conveyance.

Article 38 of the Mortgage Law provides that no instrument or contract shall be annulled to the prejudice of a third person who shall have recorded his interest by: (1) subsequent revocation of donations in the cases permitted by

law, unless the donee shall fail to comply with the conditions recorded in the Registry; (2) legal redemption in a sale and the right to acquire for the amount bid in emphyteusis; (3) nonpayment of all or part of the price of the thing sold, if the record should not show that payment was postponed; (4) double sale of the same thing when one of the sales has not been recorded; (5) contracts executed by guardians without authorization of the competent part from the Superior Court, provided the persons whom they represent have not suffered any injury exceeding one-fourth of the value of the things involved in those contracts; (6) the contracts executed in representation of absentees, provided such persons have not suffered any injury exceeding one-fourth of the value of the things involved in those contracts; (7) the conveyances made for the purpose of defrauding the creditors, with the exception of those made under a gratuitous title and when the third person was a party to the fraud; (8) any other actions granted by law to specific persons for the rescission of contracts by reason of causes which the record does not expressly show.

It is in these cases and none others that art. 38 provides that if the resolutory or rescissory action can not be brought against a third person, the proper personal action may be brought for the recovery of damages from the person who may have caused them.

Roca Sastre has made a classification of the actions of nullity, properly speaking, the resolutory, the rescindible, dividing them into four groups: actions of nullity, rescissory actions, resolutory actions, and other analogous actions.

Among the actions of nullity he includes (1) *that of nullity by reasons of nonexistence*, namely, when a juridical action contains a constitutional defect because one of its organic or structural elements is lacking (§ 1213 of our Civil Code); *that of absolute or radical nullity*, when an act or juridical business has been performed in violation of some

prohibitive legal provision (§§ 4 and 1207 of our Code); *that of avoidability,* when an act or juridical business contains some defect by reason of the capacity or consent of the executing parties (§ 1252 of our Code).

Among the rescissory actions he includes (2) that attributed to the wards and absentees in cases 1 and 2 of § 1243 of our Code; that granted to those which in a partition or division have suffered injury in more than one-fourth (§§ 1027, 1340, and 1031 of our Code); the so-called *pauliana* or revocatory action brought for the purpose of rendering void the conveyances made for the purpose of defrauding creditors.

Among the resolutory actions he includes: the pact of *lex commissoria* which corresponds to the vendor whenever it has been stipulated that in the event of nonpayment of the price agreed upon, the rescission of the sale shall take place by full right (§ 1393 of our Code); the pact of *retrovendendo* or conventional redemption, that is the privileged sale or sale with right of redemption (§ 1396 of our Code); the revocation of gifts when the donee has failed to comply with any of the conditions imposed by the donor (§§ 589 of our Code); the reversion of the gifts stipulated with right of reversion (§ 583 of our Code); the restitution of inherited property or legacies conditioned on fideicommissary substitution.

Among the analogous actions he includes the revocation of gifts by reason of survivorship or survivorship of children or ingratitude of the donee (§ 586 of our Code); the reduction of the gifts which are inofficious by reason of the extra portion (§§ 578 and 596 of our Code); the resolutory action for nonperformance of mutual obligations (§ 1077); those accruing from the subjection of property to the classical reservation (§ 930 of our Code); the action for recovery of property of absentee who has been declared dead even if he is living; the revocation of gifts and delivery of prop-

erty by way of extra portion (§ 754 of our Code); the inefficacy of marriage gifts where the marriage does not take place (§ 1285 of our Code); the extinction or reversion in matters of administrative grants (mines, public works, etc.), which constitute a situation of solvable or temporary property; the loss of the useful ownership by reason of the emphyteutic forfeiture (§ 1540 of our Code). I Roca Sastre, *Derecho Hipotecario* (5th ed. 1954, Editorial Bosch), 443–49.

It could be argued that prior to 1916, when, as in the case of the Spanish law of July 23, 1908, the contracts with usurious interest were considered in Puerto Rico completely void, such nullity could be included among the actions of absolute nullity or which could be rescinded. The effect that this could have on the validity of a mortgage foreclosure proceeding was left undecided in *Vázquez* v. *Gutiérrez*, 52 P.R.R. 162, 170 (Hutchison) (1937). But after the amendment introduced in 1916 in our Act of 1902 Fixing the Interest in All Kinds of Obligations, there is no question that such contracts are neither null nor rescindible. It simply provides for the confiscation in favor of The People of Puerto Rico of part of the principal loaned; it authorizes an independent statutory action for the collection of excess interest; and fixes at one year the prescription for the exercise of the action for recovery.

Our previous case law has strictly distinguished the true juridical field occupied by each of these actions of nullity, rescission and resolution, authorized by art. 38 of our Mortgage Law. *García* v. *De los Ángeles*, 13 P.R.R. 74, 95 (Quiñones) (1907) (reservation of property); *Porto Rico Leaf Tobacco Co.* v. *Registrar*, 13 P.R.R. 160, 163 (Quiñones) (1907) (reservation of property); *Ramos* v. *Orcasitas*, 14 P.R.R. 65, 74, 77 (Figueras) (1908) (double sale); *Abella* v. *Antuñano*, 14 P.R.R. 485, 491, 494 (Hernández) (1908) (double sale); *Torruellas* v. *Sanabria et al.*, 26

P.R.R. 560, 564 (Del Toro) (1918) (double sale); *Antonio Rojas & Co., Inc.* v. *Luna*, 39 P.R.R. 756, 759 (Hutchison) (1929) (double sale); *Pérez* v. *Montañez*, 45 P.R.R. 21, 26 (Del Toro) (1933) (double sale).

By the enumeration of the causes of action which in some way may be comprised in art. 38, concomitant with art. 33 *et seq.*, of the Mortgage Law of Puerto Rico, it is easy to determine the period of prescription of each. Some are personal actions; others are real actions; others have an expressly fixed period of prescription. Since the action for damages is a consequence of the declaration of rescission, resolution, or revocation, the former would be affected by the virtuality of the latter as respects prescription.

The fundamental determination in these cases where the property has passed into the hands of a third person is: whether the action is personal, in which case there is no retroaction; if, on the contrary, the action is real either because it involves a condition which is recorded in the registry or because of some express provision of the law to that effect, in which case the interest revert to the true owner.

Article 169 of the Mortgage Law Regulations, *in fine*, provides that the foreclosing creditor shall assume liability for any loss or damage the debtor or interested third persons (subsequent mortgagees, acquirers, etc.) may suffer "through malice or negligence in not making a true statement of facts and of the circumstances which the judge must take into consideration in authorizing the institution of the proceedings and continuing them." This provision has no effect other than to compensate the procedural disadvantage produced initially by the mortgage foreclosure proceeding in favor of the foreclosing creditor and against the debtor. It is to be noted that it does not provide for the nullity of the summary proceeding, but for the mere compensation for the deceitful or culpable conduct of the foreclosing creditor.

It is well to point out also that the action for recovery of excess interest would always be a personal action, a direct action of the debtor against the foreclosing creditor, and not an action on the realty, and this being so there is no room for the third-party mortgagee. In the case of nullity of actions, properly speaking, as we shall later see, the **right** of the debtor to take action with respect to the thing **is** consecrated by the revendicatory action, but not in the case of the indemnity provided in the event of deceit or fault of the foreclosing creditor. The reason is very simple: in the case of deceit or fault of the foreclosing creditor, the cause of nullity would not appear in the registry, while in the case of nullity of actions the cause of nullity would appear in the registry. Let us see how this principle evolves in our case law.

In the case of *Pontón* v. *Succrs. of Huertas González*, 42 P.R.R. 511, 513, 520 (Del Toro) (1931), the foreclosing creditor alleged that the proper action was the revendicatory rather than the action of nullity. The appellee alleged on the contrary: "The present is not nor could it be a revendicatory action. It is simply an action for damages based on the nullity of certain proceedings; on the malicious falsity of certain allegations in the initial petition and in regard to the certainty and amount of the debt claimed, as well as its maturity." (At 513.) (Arts. 169 and 175 of the Regulations for the Execution of the Mortgage Law.) This case included interest allegedly unpaid but which had been paid, and by virtue of this fact the maturity of the debt was alleged. (At 516.) Regarding the revendication, this Court subscribed to the statements contained in appellee's brief. Regarding the nature of the action, it concluded: "It matters not that the complaint was entitled 'for the *annulment* of foreclosure proceedings, other particulars, and for damages.' The action available to the plaintiff is that established by section 169 of the Mortgage Law [Regulations]

which binds the execution creditor to compensate the debtor or parties in interest for any damages caused to them by reason of malice or negligence in the faithful statement of the facts; and such damages are those prescribed in section 1270 of the Civil Code [§ 1255, 1930 ed., 31 L.P.R.A. § 3514, p. 185], that is, the restoration of the thing which has been the subject matter of the contract together with its fruits, and of the price, together with interest thereon; or others of a like character." (At 520.) (Italics ours.)

As may be noted, in this case the personal action for damages is predicated on art. 169 of the Mortgage Law Regulations, although the measure of such damages is fixed in accordance with the corresponding sections of the Civil Code bearing on nullity.

In *Martorell* v. *Crédito y Ahorro Ponceño*, 42 P.R.R. 632, 638 (Texidor) (1931), this Court stated: "It might be questioned whether noncompliance with any of those conditions or requirements would merely cause a liability in damages. But such liability could only have as a basis the absence from the petition of circumstances or facts that are indispensable to enable the judge to authorize the proceeding and to act therein. Where the law requires a special and definite procedure for seeking relief before a court, any departure from such procedure may and should, in our judgment, produce the nullity of all the proceedings taken on that defective basis." This case involved as not paid part of the principal and the interest which had been paid before foreclosure (at 633). At first blush it seems we are dealing with an action of absolute or radical nullity, which "is the proper action where a juridical act or business has been performed in violation of a prohibitive legal rule" (Roca Sastre, *op cit.* at 444), but in remanding the case for further proceedings as to the claim for damages (at 640), we realize that it is another way of formulating, conversely, the same doctrine announced in the *Pontón* case.

The case of *Pontón* v. *Succrs. of Huertas González* (on reconsideration), 46 P.R.R. 763, 768 (Del Toro) (1934) reaffirms the doctrine announced in the first decision as to the nature of the action, which continues to be personal between the debtor and the foreclosing creditor. The case of *Martorell* v. *Crédito y Ahorro Ponceño, supra*, has been cited thereafter but in connection with a different aspect, namely, that no sums other than those specifically included in the mortgage-security clause may be included in the mortgage debt, as was the case there with the payment of premiums on insurance policies (at 639).

The case is quite simple and we need not complicate it unduly: the declaration of nullity in the action for damages based on fraud or negligence as provided by art. 169 of our Mortgage Law Regulations is the same as the declaration of negligence in the action for damages provided by § 1802 of the Civil Code of Puerto Rico, even though the prescriptive period be different, as we shall later see.

However, when the debtor wishes to direct his action against the thing, *rei vindicatio*, for any void acts, if we should abide by the provisions of art. 175 of our Mortgage Law Regulations, the applicable article of our Mortgage Law is art. 34, according to which we must respect the right of a third party, if the cause of nullity does not appear from the Registry of Property. If the cause of nullity appears from the Registry, the debtor has a direct action against the foreclosing creditor or the subsequent acquirer (third party). Such is the case where the foreclosure proceeding has been filed in a court of improper venue (assumption of art. 170 of our Regulations), or demand has not been made on the persons specified in art. 171 of our Regulations. *Trías* v. *P. R. Leaf Tobacco Co.*, 50 P.R.R. 88, 93 (Hutchison) (1936) ; *Ayala* v. *Flores*, 50 P.R.R. 832, 839 (Travieso) (1937) ; *Crespo* v. *Schluter*, 58 P.R.R. 833, 839–40 (Del Toro) (1941). However, without expressly determining whether the action is

comprised in art. 34 or art. 38 of the Mortgage Law of Puerto Rico or in art. 169 of the Regulations thereof, or whether it is an absolute action of nullity, of nullity according to the statute on usury, simple voidability, or of fraud or negligence, this Court has declared null and void a great number of mortgage foreclosure proceedings on the ground that "sums which were not secured by mortgage" were claimed therein. Let us see how this curious particularity is developed in our case law.

In the case of *Santos* v. *Crédito y Ahorro Ponceño*, 41 P.R.R. 934 (Hutchison) (1931), a mortgage foreclosure proceeding was declared null and void on the ground that in a mortgage constituted to secure the principal exclusively, the foreclosing creditor also included interest at six per centum per annum from the date of maturity to December 31, 1927, the expenses of execution of the deed and its registration in the Registry of Property. The question before the Court was as follows: "The question is whether or not the amounts sought to be recovered as interest and expenses incident to the execution and recordation of the instrument *were secured by the mortgage*." (At 936.) This Court concluded that "Neither the interest on the indebtedness to the bank nor the money paid by it to the notary and to the registrar of property was included in the mortgage. The foreclosure proceeding was a nullity." (At. 937.) (Italics ours.)

In the case of *Martorell* v. *Crédito y Ahorro Ponceño*, 42 P.R.R. 632 (Texidor) (1931), a mortgage foreclosure proceeding was annulled on the ground that the foreclosing creditor also included in a mortgage constituted to secure the payment of principal and interest exclusively certain "amounts paid by the Crédito y Ahorro Ponceño for account of Martorell, for purposes of insurance." (At 638–39.) This Court, citing the cases of *Santos* v. *Crédito y Ahorro Ponceño, supra*, concluded: "Any sums that *Martorell* might be owing to the *Crédito y Ahorro Ponceño* by reason of the

payment of premiums on insurance policies could never have properly been included in the mortgage debt for the purpose of the foreclosure sought, *as they were not secured by the mortgage.*" (At 639.) (Italics ours.)

In the case of *Vázquez* v. *Gutiérrez*, 52 P.R.R. 162 (Hutchison) (1937), we set aside an order on a demurrer for lack of facts in a complaint in a mortgage foreclosure proceeding on the ground that the foreclosing creditor included in a mortgage constituted to secure the payment of principal and interest an item of interest which was not covered by the mortgage. This Court, citing the cases of *Santos* v. *Crédito y Ahorro Ponceño, supra,* and *Martorell* v. *Crédito y Ahorro Ponceño, supra,* concluded: "From the complaint herein it appears that the mortgage was constituted for a term of eleven months and thirteen days to secure the payment of $1,041 principal and 'the amount of interest thereon for the term of the contract' at the rate of 12 per cent per annum payable monthly. It further appears that after the filing of the amended petition in the foreclosure proceeding the district court ordered the issuance of a demand for payment (*a*) of $1,000 as balance due on the principal, because the mortgage debtor had paid $41 on account thereon and (*b*) of $10 as interest due and owing as the last monthly instalment for October 1932, because the mortgage debtor had paid $120 interest corresponding to the year for which the mortgage was constituted and $960 as interest after default (*intereses de mora*) by agreement between the parties. Obviously, the $10 interest for October 1932 was not covered by the mortgage and because of the inclusion of the item in the order directing the issuance of a demand for payment, the foreclosure proceeding was a nullity. *Santos* v. *Crédito y Ahorro Ponceño,* 41 P.R.R. 934; *Martorell* v. *Crédito y Ahorro Ponceño,* 42 P.R.R. 632." (At 171.) (Italics ours.)

Strictly speaking, neither the case of *Santos* v. *Crédito y Ahorro Ponceño* (mortgage without stipulated interest,

of any kind), nor the case of *Martorell* v. *Crédito y Ahorro Ponceño* (recovery of premiums within a mortgage foreclosure proceeding), was applicable. Furthermore, as respects interest, the *Santos* case was impliedly overruled by our later decisions according to which arrears of interest at the legal rate may be collected, after default, where no other rate of interest has been agreed upon. *Figueroa* v. *Boneta*, 58 P.R.R. 811, 816 (Del Toro) (1941).

In the latter case, a mortgage foreclosure proceeding was annulled on the ground that in a mortgage constituted to secure "the sum of $2,500 . . . which sum he [the debtor] pledges himself to return within one year counted from today, with interest at 12 per cent per annum" (at 814), the foreclosing creditor included interest at the same rate agreed upon after maturity. This Court, citing the cases of *Vázquez* v. *Gutiérrez, supra; Santos* v. *Crédito y Ahorro Ponceño, supra;* and *Martorell* v. *Crédito y Ahorro Ponceño, supra,* concluded: "With respect to the holding of the lower court that although it was not expressly contracted, the creditor could always collect interest after default (*intereses de mora*) in accordance with Sections 1053, 1054 and 1061 of the Civil Code, 1930 ed., the question is not new in this jurisdiction. In the case of *Caraballo* v. *Registrar*, 48 P.R.R. 902, 904, this Court said, ratifying and applying the doctrine of *Goico* v. *Rodríguez et al.*, 28 P.R.R. 492: 'The original contract contained no provision concerning the rate of interest in the event of nonpayment at maturity. In the absence of any such provision the mortgagees, if they had brought an action on the original contract, could not have recovered interest at more than 6 per cent after the date of maturity and default . . .' But since the interest collected was not computed at the legal rate we must conclude that the executor exceeded his rights and this makes null and void every action taken at his request." (At 816.)

In the case of *De Jesús* v. *Assad,* 63 P.R.R. 131 (Todd, Jr.) (1944), a mortgage foreclosure proceeding was annulled on the ground that in a mortgage constituted to secure the payment of principal only in accordance with the clause of constitution of mortgage, the foreclosing creditor included interest at 12 per cent annually after maturity pursuant to the clause describing the loan negotiated. This Court, citing the cases of *Santos* v. *Crédito y Ahorro Ponceño, Martorell* v. *Crédito y Ahorro Ponceño, Vázquez* v. *Gutiérrez,* and *Figueroa* v. *Boneta,* concluded that: "A mere reading of the third clause, *supra,* shows that the interest after default (*intereses de mora*) which had been agreed upon in the first clause was not secured by the mortgage lien and this being so, the lower court did not err in declaring the summary foreclosure proceeding null." (At 133.)

In the case of *F. Rodríguez Hnos. & Co.* v. *Aboy,* 66 P.R.R. 498 (Travieso) (1946), a mortgage foreclosure proceeding was annulled on the ground that in a mortgage constituted to secure the payment of principal and interest at 9 per centum per annum on a specified instalment which would fall due on December 18, 1929, the foreclosing creditor included interest at 10 per centum per annum pursuant to a private instrument to extend the term of the instalment and increase the interest on which they had agreed, independently of the covenants in the mortgage deed. (At 501.) This Court, citing the cases of *Santos* v. *Crédito y Ahorro Ponceño, supra; Martorell* v. *Crédito y Ahorro Ponceño, supra; Vázquez* v. *Gutiérrez, supra; Figueroa* v. *Boneta, supra;* and *Torres* v. *Fernández,* 65 P.R.R. 584, concluded: "It has been repeatedly held by this court that the inclusion in a summary foreclosure proceeding of a claim for an amount not secured by mortgage renders said proceeding void . . . We can not overlook the fact that a summary foreclosure proceeding is practically an *ex-parte* proceeding, and hence all the prerequisites and conditions precedent to its institution must be

strictly observed. . . Especially when we take into account that the writ demanding payment is equivalent to a judgment ordering the satisfaction thereof within the term of thirty days without the holding of a trial. . . On the grounds above set forth, we hold that the violation of the legal provisions governing said proceeding constitutes a substantial error which affects the rights of the debtor, inasmuch as within the summary proceeding there was collected an amount for interest which was not secured by mortgage." (At 515.)

In the case of *Buil* v. *Banco Popular*, 69 P.R.R. 237 (Marrero) (1948), a mortgage foreclosure proceeding was annulled on the ground that in a mortgage constituted to secure a $4,000 promissory note, at six months term, with interest at 12 per cent per annum, extendible at the will of the debtor, such extensions to be noted in the said document, which was sufficient for its validity (at 238), the foreclosing bank included in the foreclosure interest at the rate of 12 per cent per annum for the term of the extensions granted to the debtor (at 239). This Court, citing the cases of *Torres* v. *Fernández, supra; Vázquez* v. *Gutiérrez;* and *Martorell* v. *Crédito y Ahorro*, concluded: " . . . When in a summary foreclosure proceeding collection is made of amounts in excess of those owed, the proceeding is absolutely void [at 246] . . . As we have already seen, the initial petition clearly states that 'as third persons are involved, in accordance with the law, in these proceedings only the interest for the two years last past and that for the current year which has accrued is enforceable, and the same will be computed from May 25, 1931, to February 25, 1934, amounting to the sum of $1,320.' In this connection the defendant herein made in its initial petition a true statement of the law, but it computed the interest for the entire period at the rate of 12 per annum. . . In the promissory note executed by Cortijo in favor of the bank, which was copied at the beginning of this opinion, it is clearly stated that 'this obligation shall

bear interest at twelve per cent per annum' and that 'all extensions voluntarily granted (*sic*) by the holder shall be noted in the within document, which will suffice for the validity thereof.' It appears from the evidence introduced, especially from the certificate issued by the Registrar of Property of San Juan on December 27, 1944, that no extension was granted for the payment of the obligation. The Usury Act, No. 5 of August 17, 1933 (Spec. Sess. Laws, p. 26), therefore is not at all involved in this case. Nevertheless, the document mentioned above shows with all clearness that, although interest at 12 per cent until maturity was stipulated, nothing was said regarding interest after default, and it is a well-established doctrine that when in a document of this kind default interest is not stipulated, only interest at the legal rate of 6 per cent may be collected." (At 246–47.)

In the case of *Piovanetti* v. *Vivaldi*, 80 P.R.R. 108 (Saldaña) (1957), a summary foreclosure proceeding was annulled on the ground that in a mortgage constituted to secure payment of the principal and interest at 12 per cent per annum the foreclosing creditor included interest at the same rate agreed upon after maturity of the obligation, since "there was no agreement as to interest after maturity of the debt." (At 112.) This Court, citing the cases of *Buil* v. *Banco Popular, supra; Torres* v. *Fernández, supra; Figueroa* v. *Boneta, supra;* and *Vázquez* v. *Gutiérrez, supra,* concluded: "In short, therefore, in the summary foreclosure proceeding the mortgagee (defendant-appellee herein) claimed interest at 12 per cent per annum after the total expiration of the debt, when actually he could only recover the default interest at the rate of 6 per cent per annum. There is no question that such action renders null the foreclosure proceeding. In the first place, it is necessary to adhere strictly to the procedures and requirements of the summary proceeding, and any departure therefrom shall render the action void. In the second place, the claim of excessive interest

which is not secured by mortgage, constitutes a substantial error in prejudice of the mortgagor's rights and consequently, invalidates the summary foreclosure proceeding." (At 119.)

It is curious to observe that none of these cases mention art. 175 of our Mortgage Law Regulations, or state which are the minimum requirements for strict compliance with respect to interest; nor is reference made to the fact that the judge, in view of the initial petition and the accompanying documents, could determine the true scope of the mortgage security for interest.

Article 175 authorizes different actions which may be exercised by the debtor against the foreclosing creditor by reason of the former's initial inability to contest the summary proceeding. The actions authorized by art. 175 are in the guise of a continuation of the summary foreclosure proceeding, but this time of a plenary or declaratory nature, because the former is not res judicata. *Lamb & Co.* v. *Fantauzzi Hermanos*, 17 P.R.R. 291, 295–96 (Aldrey) (1911). The actions are the following: (1) nullity of title—*Succ'n Suro* v. *Succ'n Prado*, 21 P.R.R. 227, 232 (Hernández) (1914); and *Gaztambide* v. *Heirs of Ortiz*, 70 P.R.R. 388, 399 (De Jesús) (1949); (2) nullity of procedure—*American Trading Co.* v. *Monserrat*, 19 P.R.R. 941, 944 (Del Toro); and *Santana* v. *Orcasitas*, 47 P.R.R. 695, 703 (Del Toro) (1934); and the cases of *Trías* v. *P. R. Leaf*, *Ayala* v. *Flores*, *Crespo* v. *Schluter*, *supra*; (3) nullity because debt has not matured—*Pontón* v. *Succrs. of Huertas González*, *supra*; (4) nullity because the certainty of the claim has not been established—*Martorell* v. *Crédito y Ahorro Ponceño*, *supra*; (5) nullity by reason of extinction or amount—*Polanco* v. *Goffinet et al.*, 29 P.R.R. 111, 121 (Hutchison) (1921).

The so-called "strict compliance" as respects interest consists of only two requirements provided by art. 169 of our Regulations: (1) to specifically state the exact amounts *collected* by way of interest, and (2) to state the *net* amount

of the claim. If we examine the bulk of cases in which mortgage foreclosure proceedings have been annulled on the ground that "interest not secured by mortgage" has been collected therein, with the exception of the *Pontón* and *Martorell* cases, it will be seen that all the amounts certain *collected* by way of interest prior to foreclosure were specifically listed therein and the net amount thereof was also stated. Therefore, there was neither fraud nor wilful negligence.

However, although without specifically so holding, the source of authority for annulment has been art. 169 which has no other purpose than to protect the judge against that which does not appear from the documents submitted to him. All of them involve the judicial interpretation of the extension of the mortgage security as respects interest. The practical result has been that we have required the foreclosing creditors to guarantee the judicial errors which may have been committed in the service of process, holding the creditors liable for certain damages for which provision is made only in the event of fraud.

It is unquestionable, therefore, that the actions of nullity for collection of excess interest in a mortgage foreclosure proceeding are not comprised in art. 34 nor in art. 38 of our Mortgage Law. Art. 169 of the Regulations applies in the event of fraud, and the special Usury Act applies in the event of usury.

No matter the angle from which you look at this question, it is self-evident that the debtor has against the foreclosing creditor only two clear and specific actions: (1) a real action on the thing given: (*a*) where the thing has not passed into the hands of a third possessor, subacquirer, or third party in good faith, or (*b*) where, despite the fact that the thing has passed into the hands of another person other than the foreclosing creditor, there is evidence of the cause of nullity in the Registry; and (2) a personal action against the fore-

closing creditor, where the thing has passed into the hands of a third possessor and there is no evidence of the cause of nullity in the registry.

The real action is the action of revendication, the principal action which does not need a prior declaration of nullity. *Oliver* v. *Oliver*, 23 P.R.R. 168, 169, 180, 181, 187, 189, 190 (Hutchison) (1915). In this case, the debtor's recorded prior title may be successfully asserted against the fact of imperfect possession of the foreclosing creditor (Morell), or the incorrectness of the record in the Registry, (Roca Sastre) since the marshal who issues the certificate of judicial sale is not "a person who, according to the registry, had any right or power to convey the mortgaged property"—*Trías* v. *Leaf Tobacco Co.*, 50 P.R.R. 88, 93 —there being no third person involved either, since "One who acquires real property from the purchaser at a sale in a summary foreclosure proceeding with notice of records of the registry and knowing that the validity of his title depends on that of the foreclosure proceeding is not an innocent third person . . ." *Ayala* v. *Flores*, 50 P.R.R. 832, 833.

The personal action in the event of fraud is a principal action for damages for which no prior declaration of nullity is necessary—*Pontón* v. *Succrs. of Huertas González*, 42 P.R.R. 511; in the event of usury, it is a principal action for recovery and confiscation for which no prior declaration of nullity is necessary, since it is an independent statutory action defined in all respects by our Act of 1902 Fixing the Legal Rate of Interest for All Kinds of Obligations, as amended. Even in the case of an action of nullity for collection of "interest not secured by mortgage," it is a principal action for damages for which no prior declaration of nullity is necessary, since it is similar to the action governing in the case of fraud. It is advisable to state here for future consideration that, where "interest not secured by mortgage" has been included, it is not an action for damages,

as we have heretofore believed, to which the provision on fraud has been applied, but an action for recovery of money (declaratory action of a lesser or greater amount).

Regarding the latter class of action of nullity, that of "the interest not secured by mortgage," I presume that some day we shall have to pass upon the question of whether the fact that the possible cause of nullity is recorded in the Registry—an assumption which is not present in the case of fraud—converts this personal action into a real action since there is no possibility of a third person being involved, in which event we would have to apply the same test that we have applied in the cases of nullity of acts, for which we have accepted the direct action against the thing. That will be the proper time for determining whether the personal action for recovery of money or the real action is a simple election of remedies rather than an exclusion of remedies.

Regarding the period of prescription, it is not possible to mistake the period of the action for deprivation by reason of fraud or negligence established by art. 169 of our Mortgage Law Regulations with the action or omission which causes damages to another, involving malice or negligence provided by § 1802 of our Civil Code. The difference between both is evident: the first involves the violation of the duty to tell the truth, which is of a private character; the second involves the violation of the tutelary duty to protect the community from any antijuridical act, which is of a public character. Our case law is correct in the sense that it fixes at fifteen years the period of prescription of the actions for deprivation by reason of fraud, or excessive collection, as long as the same continues to be considered as something equivalent to fraud, because it has no fixed prescription period, except in the case of usurious contracts, in which case the period of prescription for requesting the excess of the amount paid as interest and the confiscation of the cor-

responding part of the principal would be one year. Incidentally, this fifteen-year period of prescription is precisely the best evidence we possess on the individualization, as a matter of damages, of the action provided by art. 169 *in fine*. If we had believed that the action of nullity precedes that of damages, the period of prescription would have been four years. But whenever we have considered that the action for damages is subsidiary to that of nullity, we have not done so because we believed the latter does not lie if the former is not exercised, but rather pursuant to its different functioning as against a third person, which, as we have seen, is not the case of art. 169 of our Regulations.

However, considering the merits of the present action, is it necessary to wait for the termination of the foreclosure proceeding in order to institute the plenary action? When does the prescriptive period begin to run?

Article 175 of our Mortgage Law Regulations, which is the special legal provision authorizing actions for nullity of title or of acts, or for maturity, truth, extinction, or *amount* of the debt, in the case of mortgage foreclosure proceedings, which actions shall be litigated in the proper plenary suit, provides that when the complaint is filed, or in the course of the plenary trial, "a demand may be made that the effectiveness of the judgment be secured by the retention of all or of a part of the amount to be delivered to the execution creditor;" in other words, that it is not necessary to wait until the termination of the mortgage foreclosure proceeding to institute the plenary action. Let us see what Morell says in this respect:

"This declaratory action is, naturally, independent from the summary proceeding and, hence, shall be prosecuted separately in the proper court pursuant to the ordinary rules of jurisdiction; but it is not necessary that it be subsequent to the summary proceeding in the sense that it is necessary for the latter to terminate. The ordinary action may be brought

almost immediately after the commencement of the summary proceeding, and may even terminate before the latter." 4 Morell, *Legislación Hipotecaria* (2d ed. 1930, Editorial Reus), 149–50.

Roca Sastre, on his part, in referring to art. 132 of the Spanish law, counterpart of art. 175 of our Mortgage Law Regulations, says: "Article 132 provides . . . that all 'claims which may be made by the debtor as well as by third possessors and other interested parties, including those relative to nullity of the title or of the acts, or of maturity, truth, extinction, or amount of the debt, shall be litigated in the proper declarative action, without ever producing the effect of *suspending or obstructing* the proceeding.'

"The proper court shall take cognizance of this declaratory action according to the ordinary rules of judicial jurisdiction; it is not therefore necessary that it be prosecuted in the same court where the summary judicial proceeding is being or shall have been prosecuted.

*"In order to institute this declaratory action it is not necessary to wait until the termination of the summary judicial proceeding, for it may also be instituted in the course of the latter.* (Italics in this paragraph ours.)

"At the time of instituting this declaratory action or in the course of the hearing, the moving party may request the judge to secure the effectiveness of the judgment which may be rendered therein by ordering the *retention,* in whole or in part, of the amount to be delivered to the moving creditor as a result of the summary judicial proceeding.

"Since the summary judicial proceeding may terminate by adjudication of the property to the creditor, it is not possible in such case to order the retention of such amount for the creditor is not entitled to any amount because he collects with the property. Morell is of the opinion that in this case an order should be made requiring the creditor to make a deposit; but we believe, as do Vallés y Pujals, that the proper

thing to do in this event would be to obtain a cautionary notice indicating that the property adjudicated to the creditor is subject to the outcome of the declaratory proceeding." IV Roca Sastre, *Derecho Hipotecario* (5th ed. 1954, Editorial Reus), 882–83.

Regarding an action for damages based on fraud or for recovery of excess amount, there is less reason to wait until the termination of the mortgage foreclosure proceeding. The violation is committed as soon as process is served on the mortgagor. That is the time as of which the debtor may bring the plenary action which, as we have already seen, is independent of the summary action. As of that time the debtor could institute the action of revendication, or the action of nullity of acts, or the action for damages by reason of fraud, or the actions involving maturity, truth, extinction, or amount, by the same token that he would be entitled to request within the same summary proceeding the suspension of such proceeding if he justifies with documentary evidence the existence of a criminal proceeding based on falsity of the mortgage title, or institutes a third-party claim of ownership accompanied by the ownership title recorded in favor of a third party, or should present evidence of the cancellation of the mortgage sought to be foreclosed, or, in the case of mortgages securing current accounts, should establish a difference between the balances. Since the prescription of actions is always a civil matter, let us see what our Code provides on this point.

Section 1869 of the Civil Code of Puerto Rico (1930 ed., 31 L.P.R.A. § 5299, p. 645), counterpart of § 1969 of the Spanish Civil Code, provides:

"The time for the prescription of all kinds of actions, *when there is no special provision to the contrary,* shall be counted from the day on which they could have been instituted." (Italics ours.)

In XII *Comentarios al Código Civil Español* (5th ed. 1951, Instituto Editorial Reus), 945, Manresa says in connection with § 1969 of the Spanish Civil Code:

"Pursuant to this doctrine, it was established in that judgment, as a rule of jurisprudence, that *'from the moment an act is performed* or any contract is executed which injures someone's rights which can be revendicated immediately, there arises the corresponding action of revendication, *and that it is as of this moment that the period of prescription should be counted in the proper case,* where the law does not expressly provide otherwise,' which rule, although adopted in connection with the rescissory action, applies to other cases which may arise." (Italics ours.)

The judgment of May 8, 1903, of the Supreme Court of Spain, 95 *Juris. Civ.* 733, 743, construing § 1969 (§ 1869 of our Code), says:

"Whereas, in view of the concept and reason of the prescription aimed principally at giving stability and certainty to the property and to all kinds of rights derived from the social relations and conditions surrounding our life, even though they do not always conform to principles of strict justice, which must be subordinated, as a lesser evil, to that which would result from an indefinite instability, it is evident that the effects which may exist in the respective titles of the former are deemed to be wiped out by the lapse of a certain period of time, and that in such event it is necessary, as a general rule, to determine a fixed and clear point from which such period begins to run, such as that prescribed in § 1969 of the Code:

"*Whereas, it is unquestionable that, from the moment an act is performed* or any contract is executed which injures someone's rights which can be revendicated immediately, *there arises the corresponding action of revendication, and that it is as of this moment that the period of prescription should be counted in the proper case,* where the law does not expressly provide otherwise, since the phrase employed by the lawmaker in said § 1969 to the effect that the time for *prescription shall be counted as of the day the actions may have been instituted, makes noticeable reference to the legal possibility,* wherefore there should only be taken into account the conditions of the

individual or other circumstances where the law so provides and predetermines as an exception, which is in consonance with the extent and purposes of the prescription." (Italics ours.)

In brief, in the case of actions of nullity of titles or acts, or actions involving maturity, truth, extinction, or *amount* of the mortgage debt involved in the summary foreclosure proceeding, or actions to recover the excess produced by the usurious nature of the debt through the corresponding confiscation, or actions to recover the amount of interest paid in excess, art. 38 of the Mortgage Law does not apply whether or not there is a third party. Article 33 might perhaps be applicable in those cases in which the possible cause of nullity does not appear in the Registry, in the absence of an express provision to the contrary, in accordance with art. 175 of our Mortgage Law Regulations.

The applicable article in actions to annul a mortgage foreclosure proceeding to recover interest paid in excess is art. 169, if there is malice or negligence in the true statement of facts and circumstances which the judge must take into consideration when authorizing the order of demand of payment. If there is no malice or negligence, the action is for recovery of the amount paid in excess; it is an ordinary action for recovery of money. If there is usury, the action is that provided by our Act of 1902 Fixing the Legal Interest on All Kinds of Obligations.

The debtor has against the foreclosing creditor two clear and definite actions: that of revendication where the property has not passed into the hands of a third person, or where, having passed, the cause of nullity appears in the Registry of Property; and the personal action for damages where the property has passed into the hands of a third person and the cause of nullity does not appear in the registry, as in the case of fraud for amounts certain *collected* prior to foreclosure but within the limits of the covenant. Such actions, that of revendication and that for damages, are not subsidiary

to any declaration of nullity but rather principal actions, and, therefore, as respects prescription, the former is extinguished after thirty years and the latter after fifteen years.

Assuming, without deciding, that the action brought herein is analogous to the action for deprivation by reason of fraud, which is governed by art. 169 of our Mortgage Law Regulations, such action had prescribed when it was instituted.